In the Matter of the Complaint of **STANDARD OIL COMPANY OF CALIFORNIA**, a corporation, for exoneration from or limitation of liability as owner of the **TUGBOAT STANDARD NO. 4** and the **BARGE S.O.C.O. NO. 18.**

In the Matter of the Complaint of **UNITED STATES** of America, for exoneration from or limitation of liability as owner of the **COAST GUARD VESSEL, CG 40427.**

Civ. Nos. 46509, 47381.

United States District Court,
N. D. California.

April 12, 1971.

W. R. Buxton, of Pillsbury, Madison & Sutro, San Francisco, Cal., for Standard Oil.

Edward M. Digardi, of Nichols, Williams, Morgan & Digardi, Oakland, Cal., for claimants.

Allan J. Weiss, Admiralty and Shipping Section, U. S. Dept. of Justice, San Francisco, Cal., for the United States.

## MEMORANDUM OPINION

LLOYD H. BURKE, District Judge.

This Memorandum Opinion is concerned solely with the issue of whether Standard Oil Company of California (hereinafter "Standard Oil") is entitled to indemnity or contribution on its claim against the United States. A full description of the facts and circumstances giving rise to the fire, the subsequent deaths, personal injuries and extensive property damage was set forth in this Court's Findings of Fact and Conclusions of Law entered on November 20, 1970. However, we feel that a short and concise recital of the pleadings involved is necessary.

By reason of a disastrous fire during the early morning of September 27, 1966, involving Tug Standard No. 4, a fully ladened-gasoline Barge Standard No. 18 and a Coast Guard patrol boat, CG 40427, Standard Oil Company and the United States filed Complaints for exoneration from or limitation of liability under 46 U.S.C. 181–196. The various claims filed in these limitation proceedings are summarized below:

(1) Standard Oil filed an affirmative claim in the Government's Complaint for exoneration from or limitation of liability, seeking indemnity or contribution for any amount or amounts paid or to be paid by it;

(2) The United States filed its property damage claim in the limitation proceeding instituted by Standard Oil;

(3) The estate of the deceased Standard Oil employees filed affirmative claims in both limitation actions against the United States and Standard Oil;

(4) Representatives of the two deceased members of the Coast Guard filed claims against Standard Oil only;

(5) The sole survivor, the third member of the Coast Guard patrol boat crew, filed a personal injury claim against Standard Oil; and

(6) All others who sustained property damage as a result of the gasoline spill and subsequent fire filed claims against Standard Oil only.

Other than Standard Oil's claim for vessel damage, no person for whom it now seeks indemnity or contribution has filed a claim against the United States under Rule F, Supplemental Rules for Certain Admiralty and Maritime Claims, 28 U.S.C.

In addition to finding that, at the time of ignition of the gasoline vapors, the Coast Guard patrol boat, CG 40427, was moored alongside the starboard quarter of Tug Standard No. 4, which, in turn, was secured in the stern saddle of the grounded gasoline Barge Standard No. 18, we held that (Finding of Fact No. 7):

The liability of Standard Oil Company of California and the United States of America is based upon equal mutual fault of both parties.

With such a fact situation, therefore, Standard Oil's claim for contribution is governed by the decisions of the Supreme Court in Halcyon Lines v. Haenn Ship Ceiling and Refitting Co., 342 U.S. 282, 284–285, 72 S.Ct. 277, 96 L.Ed. 318 (1952); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Federal Marine Terminals, Inc. v. Burnside Shipping Co., Ltd., 394 U.S. 404, 417–418, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969).

In *Halcyon, supra,* the Court stated (342 U.S. at 284–285, 72 S.Ct. at 279–280):

Where two vessels collide due to the fault of both, it is established admiralty doctrine that the mutual wrongdoers shall share equally the damages sustained by each, as well as personal injury and property damage inflicted on innocent third parties. This mari-

time rule is of ancient origin and has been applied in many cases, but this Court has never expressly applied it to non-collision cases. * * *

\* \* \* \* \* \*

We have concluded that it would be unwise to attempt to fashion new judicial rules of contribution and that the solution of this problem should await congressional action. [Citations omitted.]

The *Halcyon* rule denying contribution between joint tortfeasors in non-collision maritime cases has been consistently followed in this Circuit. Union Sulphur & Oil Corp. v. W. J. Jones & Son, 195 F.2d 93, 94–95 (9th Cir. 1952); States S. S. Co. v. Rothschild-International Stevedoring Co., 205 F.2d 253, 256–257 (9th Cir. 1953); Amerocean Steamship Co. v. Copp, 245 F.2d 291, 294 (9th Cir. 1957); Mickle v. The Henriette Wilhelmine Schulte, 188 F.Supp. 77, 81–82 (N.D.Cal. 1960).

Recently in Horton & Horton, Inc. v. T/S J. E. Dyer, 428 F.2d 1131, 1133–1134 (5th Cir. 1970), the Fifth Circuit considered *Halcyon* as being "limited to cases where the joint tortfeasors against whom contribution was sought was immune from tort liability by statute". In so holding, the Fifth Circuit stated (428 F.2d at 1133):

> In *Halcyon*, a ship repair employee was injured aboard Halcyon's vessel while engaged in making repairs. He sued the shipowner for damages for his injury, alleging negligence and unseaworthiness. As a worker covered by the Longshoremen's and Harbor Workers' Compensation Act * * * he was prohibited from also suing his employee Haenn. The shipowner impleaded the employer as a joint tortfeasor, seeking contribution which the Supreme Court denied, holding that contribution had not been authorized by Congress under these circumstances. By dictum the Court said that contribution had never been expressly applied in non-collision cases.

We do not believe *Halcyon* was intended to be so limited and, therefore, respectfully disagree with the Fifth Circuit's conclusions in *Horton, supra,* and Watz v. Zapata Off-Shore Co., 431 F.2d 100 (5th Cir. 1970).

■ The very line of reasoning that these recent Fifth Circuit cases consider as being the rationale of *Halcyon, supra,* seems to have been set aside as "unnecessary" by the Supreme Court (342 U.S. 286–287 n. 12, 72 S.Ct. 277). Contribution between mutual wrongdoers is a rule which the Court "has never expressly applied * * * to non-collision cases" (342 U.S. at 284–285, 72 S.Ct. at 279). We take this language of *Halcyon* to be more than dictum. Based upon subsequent Supreme Court decisions, it has become a well-recognized rule of maritime law.

We reiterate the view expressed in Simpson Timber Co. v. Parks, 390 F.2d 353, 356 (9th Cir. 1968), that *Halcyon* merely reflects the long standing maritime rule which, like the common law, bars contribution between joint tortfeasors. Under that view, Standard Oil is not entitled to contribution from the United States.

Having found Standard Oil not entitled to contribution, we are left to determine whether a claim for indemnity is available under contractural, quasi contractural or maritime tort principles. In deciding, federal maritime law applies. Kermarec v. Compagnie Generale, 358 U.S. 625, 628–629, 79 S.Ct. 406, 3 L.Ed. 2d 550 (1959); United N. Y. Sandy Hook Pilots Association v. Rodermond Industry, 394 F.2d 65, 70–71 (3rd Cir. 1968); United States v. The Zarco, 187 F.Supp. 371, 374 (S.D.Cal.1960).

Since Standard Oil had no contractural agreement, expressed or implied, with the United States, the holdings in Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) and Federal Marine Terminals, Inc. v. Burnside Shipping Co., Ltd., 394 U.S. 404, 89 S.Ct. 1144, 22 L. Ed.2d 371 (1969), cited by Counsel for

Standard Oil, are not controlling. The Court in *Federal Marine Terminals, Inc.,* *supra,* stated (394 U.S. at 417, 89 S.Ct. at 1152):

> This holding is no wise a departure from our decision in *Halcyon Lines* * * * that we would not 'fashion new judicial rules of contribution' between * * * joint tortfeasors.

*Ryan, supra,* was concerned solely with the issue of whether liability exists under an implied warranty where a contractor, without entering into an expressed agreement of indemnity, contracts to perform stevedoring operations and was not intended to "meet the question of a non-contractual right of indemnity" (350 U.S. at 133, 76 S.Ct. at 237).[1]

 Where, as here, Standard Oil and the United States violated similar duties to third persons, neither is entitled to indemnity. The universal rule is that, when two or more contribute by their wrongdoing to the injury of another, the injured party may recover from all of them in a joint action or he may pursue any one of them and recover from him, in which case the latter is not entitled to indemnity from those who, with him, caused the injury. Fidelity & Casualty Co. of N. Y. v. J. A. Jones Const. Co., 325 F.2d 605, 611 (8th Cir. 1963). The fact that the various property Claimants chose to pursue their cause of action only against Standard Oil does not entitle Standard Oil to indemnity from the United States. Here, Standard Oil was defending, in part, its own tort; it cannot now claim indemnity from another who was also found guilty of tortious conduct. The aforesaid rule is fully recognized in this Circuit. In Amerocean Steamship Co. v. Copp, 245 F.2d 291, 294 (9th Cir. 1957), the Court stated:

> When two parties, jointly and concurrently, breach the duty each owes to a third person and damage results to him, each is liable to the full extent therefor. Each had committed a

wrongful act. Both are equally guilty of wrongful conduct. But one of such guilty parties has no right of indemnity or contribution from the other, if he has been held responsible in damages to the injured party. He cannot take advantage of his own wrong on the ground that the other is equally guilty. This doctrine is well established at common law and is followed in admiralty.

██ In contrast to indemnity based upon contract where "the theories of 'active' or 'passive' as well as 'primary' or 'secondary' negligence [are] inappropriate", Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 355 U.S. 563, 569, 78 S.Ct. 438, 442, 2 L.Ed.2d 491 (1958), it it clear that an active tortfeasor cannot be indemnified under tort principles. Under the tort theory, the right of indemnity exists only when one party is guilty of active or affirmative negligence, while the other's fault is merely technical or passive. Humble Oil & Refining Co. v. Naquin, 414 F.2d 912, 914 (5th Cir. 1969); Tri-State Oil Tool Industries, Inc. v. Delta Marine Drilling Co., 410 F.2d 178 (5th Cir. 1969). Cf. Simpson Timber Co. v. Parks, *supra,* where the shipowner, innocent of any fault, was awarded indemnity from the sole wrongdoer under equitable principles. Such, however, is not the case at bar.

Neither the United States nor Standard Oil was found guilty of merely technical or passive negligence. But to the contrary, we found liability based "upon equal mutual fault of both parties". In applying the principles of tort indemnity in the instant matter, it is clear that Standard Oil is not entitled to a recovery. To hold otherwise would allow a joint tortfeasor, barred from contribution, the right to recoup all its losses under the tort indemnity theory.

Because there is no right to contribution in this non-collision maritime case

---

1. Weyerhaeuser Steamship Co. v. United States, 174 F.Supp. 663 (N.D.Cal.1959), also cited by Standard Oil, involves a ship collision and, therefore, distinguishable on its facts from the instant matter.

**392**

nor is there any contractual or tortious right to indemnity as between active joint tortfeasors, we must deny Standard Oil's claim.

So ordered.